**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAYMOND GUISTO,<br><br>                          Plaintiff,<br><br>            -against-<br><br>CITY OF NEW YORK, JOHN RYAN, Individually, MANUEL RODRIGUEZ, Individually, and JOHN DOE 1 through 5, Individually, (the names John Doe being fictitious, as the true names are presently unknown),<br><br>                          Defendants. | **COMPLAINT**<br><br>15-CV-7416<br><br>**JURY TRIAL DEMANDED** |

Plaintiff RAYMOND GUISTO, by his attorney, The Trainor Law Firm, P.C., complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which are secured by these statutes and the United States Constitution.

## JURISDICTION

2.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.      This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C.

§ 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5.     Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

6.     Plaintiff RAYMOND GUISTO is a forty-five (45) year old male and United States Citizen who resided in Brooklyn, New York, at all times hereinafter mentioned, and currently resides in Staten Island, New York.

7.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9.     At all times hereinafter mentioned, the individually named defendant, JOHN RYAN (Shield No. 4913), was a duly sworn police officer, sergeant, and supervisor of the NYPD, attached to the NYPD's Narcotics Bureau Brooklyn South ("NBBS"), and was acting under the supervision of the NYPD, according to his official duties; and, as an NYPD sergeant, he was the ranking officer with supervisory responsibilities, and an NYPD policy maker with respect to the matters complained of herein.

10.     At all times hereinafter mentioned, the individually named defendant, MANUEL RODRIGUEZ (Shield No. 7147), was a duly sworn police officer and detective of the NYPD, attached to the NYPD's NBBS, and was acting under the supervision of the NYPD and

2

Defendant JOHN RYAN, and according to his official duties.

11.    At all times hereinafter mentioned, the individually named defendants, JOHN DOE 1 through 5 (Shield Nos. unknown), were duly sworn police officers of the NYPD, attached to the NYPD's NBBS, and were acting under the supervision of the NYPD and Defendant JOHN RYAN, and according to their official duties.

12.    At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the CITY OF NEW YORK.

13.    Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

14.    Plaintiff RAYMOND GUISTO ("Mr. Guisto") is an electrician and member of the United Service Workers Union Local 363.

15.    On April 16, 2013, at approximately 7:00 p.m., Mr. Guisto was home at his apartment, located at 2042 Bergen Avenue, Brooklyn, New York, after having worked all night and into the morning.  He was in for the night, laying in bed, and watching television when he heard a commotion outside of his home.

16.    As Mr. Guisto looked outside of his window, he observed his wife's Grand Cherokee Jeep and his Ford F-150 truck parked across the street from his home.  He also observed a non-descript van blocking his view of his and his wife's vehicles and saw what appeared to be people's legs and feet between the vehicles.

17.    While looking outside, Mr. Guisto observed some of his neighbors observing

what was happening by his vehicles. He then informed his wife, Angelique Guisto ("Mrs. Guisto"), that something was going on by their vehicles.

18.     Mr. Guisto then put on his slippers and pajamas and went outside to see what was happening.

19.     As Mr. Guisto walked toward his and his wife's vehicles, he saw Defendant Ryan, who was in plain clothes and did not appear to have visible identification on his person from Mr. Guisto's vantage point, manhandling two teenagers on his wife's jeep.

20.     Mr. Guisto introduced himself to Defendant Ryan as "Ray Ray, the electrician," and stated that he lived across the street, and inquired about what was happening.

21.     Mr. Guisto remained at least ten (10) feet away from Defendant Ryan.

22.     At that moment, he observed Defendant Ryan place handcuffs on the wrists of one of the teenagers whom he had against Mrs. Guisto's jeep.  Upon observing the handcuffs, Mr. Guisto assumed Defendant Ryan was a police officer.

23.     Defendant Ryan then informed Mr. Guisto that he was arresting the two men, and that Mr. Guisto should not concern himself with it, and that there was no problem.

24.     Relieved that it was a police officer with whom he was talking, Mr. Guisto was preparing to walk back home when Defendant Manuel Rodriguez, without any provocation, lawful justification, or warning, jumped on Mr. Gusito's back and tried to drag him to the floor. Like Defendant Ryan, Defendant Rodriguez was in plain clothes.

25.     Mr. Guisto told Defendant Rodriguez that he lived across the streets, the two vehicles were his, and implored Defendant Ryan to inform Defendant Rodriquez that he had nothing to do with any criminal activity.

26.     Defendant Rodriguez began screaming at Mr. Guisto to stop resisting.  Then,

4

Defendant Rodriguez began hitting Mr. Guisto with, upon information and belief, a metal collapsible baton, or ASP, on the back of the head.

27.    Upon Defendant Rodriguez's assault upon him, Mr. Guisto began having chest pains and difficulty breathing.

28.    He informed the defendants that he had chest pains and could not breath.  Mr. Guisto suffers from hypertension and takes the prescription drug "Norvasc" for this condition. He explained to the defendants that he had this condition but to no avail.

29.    Then, Defendants Rodriguez, Ryan, and John Doe 1 through 5, actively participated in and/or failed to prevent each other from illegally assaulting and imprisoning Mr. Guisto.

30.    Upon illegally assaulted him, the defendants forcibly pulled Mr. Guisto from the floor, placed handcuffs on his wrist, without any justification, and placed him inside of an NYPD van for imprisonment, along with the two teenagers whom the defendants arrested by Mr. Guisto's vehicle.

31.    Mr. Guisto repeatedly requested medical attention while he was inside of the NYPD van, but the defendants ignored these requests.

32.    The defendants drove the two teenagers whom they arrested to the NYPD's 63rd Precinct, and released them from the van into the precinct.

33.    After the defendants released these two teenagers, Defendant Rodriquez, without any lawful justification, punched Mr. Guisto in the ribs and the face, while Mr. Guisto was handcuffed.  Defendant Rodriquez admonished Mr. Guisto that that was what happened to those who "want to be a tough guy."

34.    The defendants then drove Mr. Guisto to another NYPD precinct.   From this

5

precinct, the defendants finally sought medical attention for Mr. Guisto.

35.    The defendants placed Mr. Guisto inside of an ambulance that transported him to the Emergency Room at Brookdale University Hospital and Medical Center.  Mr. Guisto was handcuffed to the hospital bed in which he was being treated for the injuries that the defendants inflicted upon him.

36.    As a result of the defendants assaulting him, Mr. Guisto suffered head trauma, multiple contusions and lacerations, deep bruising and swelling, substantial pain; persistent discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

37.    Upon receiving treatment at Brookdale Hospital, Mr. Guisto was transported back to the NYPD precinct for imprisonment.

38.    The following day, Mr. Guisto was transported for further imprisonment to the Brooklyn Detention Complex.

39.    Finally, on April 18, 2013, Mr. Guisto was brought from the Brooklyn Detention Complex to the Kings County Criminal Court for arraignment on the baseless charges filed under docket number 2013KN029290, and captioned as "The People of the State of New York v. Raymond Guisvo."  These charges were filed based upon the false allegations of Defendants Ryan and Rodriguez.

40.    Defendants Ryan and Rodriguez manufactured the underlying false allegations and forwarded this information to the District Attorney's Office knowing that it would be used against Mr. Guisto at trial.

41.    Defendant Rodriguez falsely claimed, among other false allegations, that Mr. Guisto swung at Defendant Ryan and shoved Defendant Ryan about the chest.

42.     In the later hours of April 18, 2013, Mr. Guisto was arraigned on false charges of assault in the second and third degrees, obstructing governmental administration, and resisting arrest.  Upon arraignment, the presiding Criminal Court judge released Mr. Guisto on his own recognizance.

43.     Prior to Mr. Guisto's release at arraignment, he spent approximately forty-eight (48) hours falsely imprisoned.

44.     The defendants arrested and initiated criminal proceedings against Mr. Guisto despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

45.     The defendants initiated this prosecution for the purpose of covering up their unlawful and unjustified assault upon Mr. Guisto.

46.     This false arrest and denial of Mr. Guisto's fair trial rights compelled him to return to the Kings County Criminal Court to face these false charges on at least five (5) occasions when, on January 21, 2014, upon the application of the Kings County District Attorney's Office, the Criminal Court adjourned the case in contemplation of dismissal.

47.     All of the events leading up to and culminating in Mr. Guisto being subjected to excessive force, false arrest, and denial of fair trial rights occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

48.     All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

7

49.     The underlying application of excessive force, false arrest, and denial of the right to fair trial is not an isolated incident.  Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest.

50.     Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging victimized citizens with Assault in the Second Degree.  See, e.g., Graham v. City of New York, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); Rodriquez v. City of New York, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); Tucker v. City of New York, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); Williams v. City of New York, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); Stroe v. City of New York, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same). See also Ashley Southall & Marc Santora, Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-become-rallying-cry-before-his-funeral.html?_r=0 ("'I can't breathe,' Eric Garner had said over and over again last Thursday after he was apparently placed in a chokehold by the

police and wrestled to the ground, accused of illegally peddling cigarettes. . . .   The [NYPD] has

banned the use of chokeholds since 1993.  In 1994, a Bronx man was killed by an officer using

the grip.  Despite the ban, complaints of officers' using chokeholds have steadily come before

the Civilian Complaint Review Board.   From 2009 to 2013, the board received 1,022 such

complaints."); Rocco Parascandola & Thomas Tracy, NYPD puts Brooklyn cop on desk duty for

reportedly stomping on suspect who lay on ground, N.Y. DAILY NEWS, July 26, 2014,

http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-stomping

-man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday after

allegedly stomping on a suspect's head, authorities said.  NYPD Officer Joel Edouard, 36, had

subdued Jahmil-El Cuffee on suspicion of marijuana possession on Malcolm X Blvd. in Bedford-

Stuyvesant at 8 p.m. Wednesday – and then he booted the man as he lay on the ground, officials

said."); Robert Gearty, Bronx man suing NYPD for excessive force for a rough arrest captured

on cell phone video, N.Y. DAILY NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-

york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-

article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers

for excessive force: "The video lasts about one minute and appears to show then 19-year-old

Luis Solivan being pummeled in the face several times by one officer as the other cop pinned

him down. . . . [T]he two officers chased Solivan into his home for no reason, pepper-sprayed

him and beat him with their hands and a walkie-talkie.  Solivan's mother and two younger

brothers were in the University Avenue apartment at the time.  After Solivan was hand-cuffed,

he was kicked and his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel

Beekman, Man wins $2.5 million in lawsuit against NYPD cops over using excessive force, N.Y.

DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2-5m-suit-nypd-

article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500.000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, Lawyer for drug suspect who was beaten by cops demands special prosecutor, N.Y. DAILY NEWS, Feb. 6, 2012, http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video). See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January - June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf ("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to 49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf ("In 2012, 50% of all complaint contained one or more force allegations, compared to 48% in 2011.").

51. Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the defendants to violate Mr. Guisto's civil rights.

52. Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train, supervise, and discipline them.

10

53.     As a result of the foregoing, Plaintiff RAYMOND GUISTO, has sustained, among other damages, physical injuries, substantial pain, mental injuries, emotional distress, embarrassment, and deprivation of his constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

54.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "53" with the same force and effect as if fully set forth herein.

55.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

56.     All of these aforementioned acts deprived Plaintiff RAYMOND GUISTO of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

57.     The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

58.     The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

59.     The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

60.     As a result, Plaintiff RAYMOND GUISTO is entitled to compensatory damages

in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A SECOND CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

61.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "60" with the same force and effect as if fully set forth herein.

62.     The defendants arrested Plaintiff RAYMOND GUISTO without probable cause or legal privilege, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

63.     The defendants caused Plaintiff RAYMOND GUISTO to be falsely arrested and unlawfully imprisoned, resulting in Plaintiff being put in fear for his safety, humiliated, embarrassed, and deprived of his liberty.

64.     As a result, Plaintiff RAYMOND GUISTO is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A THIRD CAUSE OF ACTION
(Excessive Force under 42 U.S.C. § 1983)

65.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66.     The defendants employed force against Plaintiff RAYMOND GUISTO that was excessive, objectively unreasonable, and in a clear violation of Plaintiff's constitutional rights.

67.     At no time did Plaintiff RAYMOND GUISTO pose a threat to the safety of the

defendants or anyone else, nor resist or attempt to evade arrest in anyway whatsoever.

68. As a result of the defendants' conduct, Plaintiff RAYMOND GUISTO was subjected to excessive force and sustained physical injuries, including, but not limited to, head trauma, multiple contusions and lacerations, deep bruising and swelling, substantial pain; persistent discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

69. As a result, Plaintiff RAYMOND GUISTO is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
<u>(Denial of the Right to Fair Trial under 42 U.S.C. § 1983)</u>

70. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "69" with the same force and effect as if fully set forth herein.

71. The defendants falsified the information against Plaintiff RAYMOND GUISTO likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of Plaintiff.

72. The defendants caused Plaintiff RAYMOND GUISTO to be prosecuted upon the false information that they submitted to the District Attorney's Office until the underlying prosecution was adjourned in contemplation of dismissal on January 21, 2014.

73. As a result, Plaintiff RAYMOND GUISTO is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and

disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)

74.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "73" with the same force and effect as if fully set forth herein.

75.     The defendants had an affirmative duty to intervene on behalf of Plaintiff RAYMOND GUISTO, whose constitutional rights were being violated in their presence by other officers, including the individual defendants.

76.     The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

77.     As a result of the defendants' conduct, Plaintiff RAYMOND GUISTO was subjected to excessive force; false arrest; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

78.     As a result, Plaintiff RAYMOND GUISTO is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

79.     All of the foregoing acts of the defendants deprived Plaintiff RAYMOND GUISTO of federally protected rights, including, but not limited to, the right:

        A.     To be free from deprivation of civil rights and liberty;

        B.     To be free from false arrest/unlawful imprisonment;

      C.      To be from excessive force;

      D.      To be free from denial of the right to a fair trial; and

      E.      To be free from the failure to intervene.

80.     As a result, Plaintiff RAYMOND GUISTO is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff RAYMOND GUISTO demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury;

(B)    punitive damages against the individual defendants in an amount to be determined by a jury;

(C)    reasonable attorneys' fees and the costs and disbursements of this action; and

(D)    such other and further relief as the Court deems just and proper.

**Dated:** New York, New York
      December 30, 2015                Respectfully submitted,

                                  **THE TRAINOR LAW FIRM, P.C.**
                                  26 Broadway, Suite 2100
                                  New York, New York 10004
                                  Tel:  (212) 323-7410
                                  Fax: (212) 323-7411

                          By:     *Craig Trainor*
                                  CRAIG TRAINOR (CT 1823)

                     Attorney for Plaintiff RAYMOND GUISTO

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RAYMOND GUISTO,

                    Plaintiff,

          -against-

CITY OF NEW YORK, JOHN RYAN, Individually, MANUEL RODRIGUEZ, Individually, and JOHN DOE 1 through 5, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

                  Defendants.

**15-CV-7416**


# COMPLAINT


**THE TRAINOR LAW FIRM, P.C.**
Attorney for Plaintiff
26 Broadway, Suite 2100
New York, New York 10004